IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN LAPIER,<br><br>    Plaintiff,<br><br>       v.<br><br>PRINCE GEORGE'S COUNTY,<br>MARYLAND, *et al.*,<br><br>    Defendants. | Civil Action No. 10-CV-2851 AW |

## MEMORANDUM OPINION

Plaintiff Steven LaPier brings this action against the following Defendants: Prince George's County, Maryland; Prince George's County Police Department; and Roberto L. Hylton, Chief of Police of Prince George's County. Mr. LaPier asserts a § 1983 claim founded on the First Amendment, along with disability discrimination claims under the ADA and Rehabilitation Act of 1973. Mr. LaPier also asserts claims under Maryland state law for disability discrimination, age discrimination, and wrongful or abusive discharge. Presently pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Motion to Dismiss"). The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2010). For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The Court takes the following facts from Mr. LaPier's Complaint and construes them in a light most favorable to him. Plaintiff Steven LaPier is a resident of Anne Arundel County.

Defendant Prince George's County ("County") is a political subdivision of the State of Maryland. Codefendant Prince George's County Police Department ("Police Department") is the primary law enforcement agency for the County.

Mr. LaPier began training as a Student Officer at the Police Department on or about September 22, 2008. Around April 9, 2009, Mr. LaPier passed out during a training run. One or more doctors diagnosed Mr. LaPier with a blood disorder that causes anemia. Mr. LaPier resumed his normal training activities after a weeklong period in which his doctors permitted him to perform only light work. In a letter dated May 5, 2009, a doctor informed the Police Department that Mr. LaPier was fit to resume normal training activities.

The County Medical Board ("Board") met on June 4, 2009. The Board reviewed Mr. LaPier's medical records and determined him to be unfit for duty. The Board recommended Mr. LaPier's separation from the Police Department. Roberto L. Hylton, Chief of Police for Prince George's County, advised Mr. LaPier of the Board's recommendation in a letter dated June 9, 2009 and delivered on June 18, 2009. In the letter, Chief Hylton stated that he accepted the Board's recommendation and intended to separate LaPier.

At an unspecified time before his separation, Mr. LaPier verbally advised Chief Hylton of alleged corruption that had taken place in the Police Department. The gravamen of Mr. LaPier's complaint was that instructors had helped students cheat on exams.

On October 14, 2010, Mr. LaPier filed a Complaint containing six Counts. Count I asserts a claim under § 1983 for an alleged violation Mr. LaPier's First Amendment rights. Count II asserts a state law claim for wrongful or abusive discharge. Count III asserts a claim for violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"). Count IV asserts a claim for ADA

violations. Counts V and VI assert state law claims for, respectively, disability and age discrimination.

On November 29, 2010, Defendants filed their Motion to Dismiss. Mr. LaPier filed his Response on January 12, 2011, and Defendants filed a Reply on February 24, 2011.

## II.   STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need satisfy only the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Compare Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases clarify that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addressing a motion to dismiss, a court should first review a complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1954. In its determination, the court must construe all factual allegations in a light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty.*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

### III.   LEGAL ANALYSIS

#### A.   Preliminary Issues

##### 1.   *Consideration of Matters Outside of the Pleadings*

Defendants invite the Court to treat their Motion to Dismiss as one for summary judgment. The Court accepts this invitation in part and declines it in part. It is premature to evaluate the propriety of treating Defendants' Motion to Dismiss as one for summary judgment in relation to Mr. LaPier's federal claims because the Court dismisses all these claims without prejudice. The Court assesses the appropriateness of converting Defendants' Motion to Dismiss into one for summary judgment with respect to Mr. LaPier's state law claims as the Court dismisses these claims with prejudice. The Court reserves this analysis for the section in which it analyzes the merits of Defendants' Motion to Dismiss Mr. LaPier's state law claims.

##### 2.   *Whether the Police Department is Subject to Suit*

Rule 17(b) of the Federal Rules of Civil Procedure ("Federal Rules") provides that the law of the state where the court is located determines the capacity to sue or be sued. Fed. R. Civ. P. 17(b). Under Maryland law, it is well-established that county police departments are agents of the county and not treated as separate legal entities. *See Clea v. Mayor and City Council of Balt.*, 541 A.2d 1303, 1306 (Md. 1988) (citation omitted) (stating that county police departments are

agencies of the county), *superseded by statue as recognized in*, *Balt. Police Dept. v. Cherkes*, 780 A.2d 410, 422–36; *Hines v. French*, 852 A.2d 1047, 1068 (Md. Ct. Spec. App. 2004) (citations omitted); *see also Stewart v. Prince George's County, Md.*, No. Civ.A. AW-01-302, 2001 WL 759890, at *3 (D. Md. May 23, 2001) (citations omitted) (noting that the Prince George's County Charter incorporates only the County as a legal entity). Accordingly, the Court dismisses Mr. LaPier's § 1983 and ADA claims in relation to the Police Department.[1]

**B.     Federal Claims**

Mr. LaPier asserts claims under (1) § 1983, (2) the ADA, and (3) the Rehabilitation Act. The § 1983 claim fails because Mr. LaPier failed to adequately allege that the County executed a policy or custom that caused the injury of which he complains. The ADA and Rehabilitation Act claims fail because Mr. LaPier failed to sufficiently plead that he is disabled.

   *1.     § 1983 Claim*

      a.     § 1983 Claim Against the County

In pertinent part, § 1983 provides as follows: "Every *person* who, under color of [law], subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law . . . ." 42 U.S.C.A § 1983 (West 2005) (emphasis added). In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court determined that municipalities are persons under § 1983 and

---

[1] It is premature to determine whether Mr. LaPier may sue the Police Department under the Rehabilitation Act. Some courts have held that state or local governments may not automatically incur liability for the discriminatory actions of subordinate actors or agencies under the Rehabilitation Act. *See, e.g.*, *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991). Rather, for liability to attach, a sufficient nexus must exist between the entity on which the plaintiff seeks to impose liability and the alleged discrimination. Other cases indicate that Schroeder's sufficient nexus rule is far from settled. These cases propose that respondeat superior liability applies to Rehabilitation Act claims. *See, e.g.*, *Rosen v. Montgomery County, Md.*, 121 F.3d 154, 157 n.3 (4th Cir. 1997). The Court cannot determine which of these lines of cases applies given the posture of the case. To be sure, information regarding the extent to which the County and/or Police Department receives federal financial assistance is necessary to resolve this question.

that people can sue municipalities for damages on account of constitutional deprivations. 436 U.S. at 690.

Yet municipal liability arises under *Monell* only where the alleged constitutional violation furthers a municipal policy or custom. *Id.* at 694; *see also Walker v. Prince George's County, Md.*, 575 F.3d 426, 431 (4th Cir. 2009). Therefore, § 1983 plaintiffs must "identify a municipal policy[] or custom that caused [their] injury." *Id.* (citing *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (quotations marks omitted)).

In this case, Mr. LaPier alleges that he had verbally informed Chief Hylton of corruption in the Police Department at an unspecified time before his termination. Mr. Lapier further alleges that Mr. Hylton fired him after this event. These allegations, in Mr. LaPier's estimation, support the inference that Chief Hylton fired him in retaliation for speaking about a matter of important public concern.

This argument is unavailing. Mr. LaPier's Complaint contains no allegations supporting the inference that this isolated action constitutes a policy or custom of the County. Furthermore, even if this single action could arise to a policy or custom for the purposes of *Monnel*, the Court cannot infer that the firing bore sufficient temporal proximity to the incident to justify an inference of causation. Mr. LaPier's Complaint fails to provide a date—even an approximate date—when he verbally informed Chief Hylton of the alleged corruption in the Police Department. Furthermore, the Complaint furnishes no further factual context for this single action. Rather, the Complaint vaguely states that "[Mr. Lapier] had verbally reported said [corruption] to his superiors prior to [the firing]." In other words, the statement is a threadbare factual allegation that lacks a meaningful reference to actual events. These allegations "do not permit [the Court] to infer more than the mere possibility" of retaliation. *See Walker*, 575 F.3d at

431 (citing *Iqbal*, 129 S. Ct. at 1950). The mere possibility of a constitutional violation is insufficient to state a facially plausible claim for relief. Consequently, Mr. LaPier's Complaint fails to adequately allege that the County is a person within the meaning of § 1983.

Mr. LaPier argues in his Response that his firing was part of a broader pattern of corruption in the Police Department. To support his position, Mr. LaPier references events that have allegedly taken place since he commenced this action. The problem with this argument is that these allegations appear nowhere in the Complaint. Therefore, although the Court harbors reservations about the viability of Mr. LaPier's *Monnel* claim, the Court dismisses his Complaint without prejudice and affords him an opportunity to remedy its defects.

      b.     § 1983 Claim against Hylton[2]

Defendants argue that qualified immunity insulates Chief Hylton from liability. The Supreme Court has articulated a two-step test to resolve qualified immunity claims. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). First, courts must "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. *Id.* (citations omitted). Second, where plaintiffs satisfy the first step, courts must determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

This case's posture precludes the Court from applying this test. The Court has granted Mr. LaPier leave to amend his deficient Complaint with respect to his § 1983 claim. Although Mr. LaPier has alleged that Chief Hylton violated his First Amendment right to comment on

---

[2] Defendants argue that Mr. LaPier sued Chief Hylton in his official capacity. Because suits against municipal officials in their official capacity constitute suit against the municipality itself, Defendants urge this Court to dismiss Mr. LaPier's § 1983 claim against Chief Hylton.
  This argument fails for two reasons. One, Mr. LaPier sued Chief Hylton in his individual capacity. Mr. LaPier explicitly states in the Complaint's preamble that he sues Chief Hylton "individually" for violating his First Amendment rights. The clarity of this language ends the analysis. Second, naming a municipal officer in his or her official capacity is not technically incorrect even though a plaintiff need not do so to prosecute a claim of municipal liability. *Spell v. McDaniel*, 824 F.2d 1380, 1396 (4th Cir. 1987).

matters of public concern, the precise nature of this right may depend on any new allegations Mr. LaPier may raise in his amended complaint. *Cf. Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007) (stating that courts must define the right in question at a high level of particularity for the purposes of applying the qualified immunity test). Thus, it is premature for the Court to pass on the question of qualified immunity.

### 3. *Disability Discrimination*

#### a. ADA

An individual can show that he is disabled in three ways, only two of which are relevant to this case, under the ADA Amendments Act of 2008 ("2008 ADA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified in scattered sections of 42 U.S.C.A.). An individual can show that he suffers from "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C.A. § 12102(1)(A) (West 2005 & Supp. 2011). Alternatively, an individual can show that his employer regarded him as having such an impairment. *Id.* § 12102(1)(C). The Court assesses these arguments in turn.

##### i. *Actual Disability*

In pertinent part, the 2008 ADA defines disability as "a physical . . . impairment that *substantially limits* one or more major life activities . . . ." *Id.* § 12102(A) (emphasis added). The 2008 ADA does not define the phrase "substantially limits."

Courts have first recourse to a statute's legislative history where its text is ambiguous. *Blum v. Stenson*, 465 U.S. 886, 896 (1984). The version of the 2008 ADA that the House of Representatives passed defined the phrase "substantially limits" as "materially restricts." H.R. 3195, 110th Cong. § 3(2) (2008), 2007 CONG US HR 3195 (Westlaw). The House report for H.R. 3195 states that this language sought to create a standard less demanding than "severe" or

"significant." H.R. Rep. No. 111-730, pt. 1, 2008 WL 2502300, at *10 (2008). Yet the Senate removed this language from the version of the bill that Congress ultimately passed. *Compare* S.B. 3406, 110th Cong. §3(4)(B)(2008), 2007 CONG US S 3406 (Westlaw), *with* 42 U.S.C.A. § 12102(4)(B) (West 2005 & Supp. 2011). Therefore, although the 2008 ADA evinces Congress's intent to lower the threshold for demonstrating a disability, the impairment's severity must rise above a floor of material restriction. *Cf.* H.R. Rep. No. 111-730, pt. 1, 2008 WL 2502300, at *10 (2008) (stating that "'materially restricted' is meant to be . . . more than a moderate limitation").

In this case, Mr. LaPier's factual allegations fail to support the inference that his impairment constituted a substantial limitation. Mr. LaPier avers that he suffered from a blood disorder that was sufficiently severe to cause him to lose consciousness on one occasion, and that he could perform only light work for a week. Yet Mr. LaPier alleges that he "resumed his normal training routines" after the weeklong period of restriction. Likewise, Mr. LaPier contends that his physician advised the Police Department that "he was fit to resume his training" with the Police Department. In other words, Mr. LaPier's Complaint contains no indication that his medical condition affected him beyond the week of light duty. Moreover, Mr. LaPier acknowledges that he managed to perform light work during his week of restriction. Notably, Mr. LaPier does not maintain that his medical condition is episodic or in remission. *Cf.* 42 U.S.C.A. § 12102(4)(D) (West 2005 & Supp. 2011). These factual assertions are insufficient to state a plausible claim that Mr. LaPier's medical condition constituted even a material restriction, let alone a substantial limitation, on a major life activity.

### ii. *Perceived Disability*

In pertinent part, the 2008 ADA provides that disability means being regarded as having an impairment that substantially limits at least one major life activity. *See id.* § 12102(1). An employee may satisfy this definition by showing that his employer subjected him to discrimination "because of a . . . perceived . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). However, the 2008 ADA expressly states that the "regarded as" definition of disability "shall not apply to impairments that are transitory and minor." *Id.* § 12103(3)(B). Transitory impairments are those with "an actual or expected duration of 6 months or less." *Id.*

In the present case, the Complaint asserts that Mr. LaPier's impairment affected him for only a week. Furthermore, Mr. LaPier fails to allege that his condition was episodic, in remission, or otherwise expected to last for a significant length of time. Therefore, as a matter of law, the impairment has an actual or expected duration of six months or less. Moreover, the allegations fail to sustain the inference that Mr. LaPier's transitory condition was more than minor. According to the Complaint, the condition affected Mr. LaPier's capacity to work for only one week, and Mr. LaPier still performed light duty during this week. Mr. LaPier further asserts that he resumed his normal work activities when he returned to work and that his doctor declared him fit to return to duty. For these reasons, the Complaint fails to state a plausible claim for perceived disability under the 2008 ADA.

### b. Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . [shall] be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794(a) (West 2005) (emphasis added). Courts use the same

standards to analyze a claim for discrimination under the Rehabilitation Act as they do a claim for discrimination under the 2008 ADA. *See* 2008 ADA, Pub. L. 110-325, § 7(1), 122 Stat 3553, 3558 (amending the Rehabilitation Act to incorporate the 2008 ADA's definition of disability); *see also Cochran v. Holder*, No. 10–1548, 2011 WL 2451724, at *3 (4th Cir. June 21, 2011) (citations omitted). Thus, because Mr. LaPier fails to state a claim for disability discrimination under the ADA, it follows ipso facto that he fails to state a claim for disability discrimination under the Rehabilitation Act.

For the reasons set forth above, the Court dismisses Mr. LaPier's disability discrimination claims. This dismissal is without prejudice and Mr. LaPier may file an amended complaint clarifying the factual basis of his ADA and Rehabilitation Act claims.

## C.  State Law Claims

Mr. LaPier asserts state law claims for age discrimination, disability discrimination, and wrongful or abuse discharge. All these claims fail in light of controlling Maryland authority.[3] As the Court consider material that technically falls outside of Mr. LaPier's Complaint, the Court treats Defendants' Motion to Dismiss as one for summary judgment with respect to Mr. LaPier's state law claims.

### *1.  Propriety of Treating Defendants' Motion to Dismiss as One for Summary Judgment*

Rule 12(d) of the Federal Rules provides that courts must treat 12(b)(6) motions as motions for summary judgment where the court considers matters outside the pleadings. Fed. R. Civ. P. 12(d). In such cases, courts must give the defendant a "*reasonable opportunity* to present all the material that is pertinent to the motion." *Id.* (emphasis added). The term "reasonable

---

[3] The Court recognizes that Defendants based their Motion to Dismiss Mr. LaPier's state law claims on several grounds. The Court need not reach the merits of all these arguments in view of its resolution of Mr. LaPier's state law claims on just one of these grounds.

opportunity" entails two basic requirements. One, the defendant must have some indication that the court is treating the motion as one for summary judgment. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citations omitted). A defendant's awareness that material outside the pleadings is pending before the court satisfies this notice requirement. *See id.* Two, courts must satisfy themselves that the nonmoving party has had a fair opportunity to discover information essential to oppose the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)).

In this case, the Motion to Dismiss's alternative caption and attached exhibits satisfy the notice requirement. *See Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 260–61 (1998). Furthermore, the fairness requirement is satisfied because no amount of discovery would help Mr. LaPier withstand summary judgment. Defendants' Motion to Dismiss and Mr. LaPier's Response are the only materials outside the pleadings that the Court considers in granting summary judgment for Defendants on Mr. LaPier's state law claims. The Court does not rely on these legal briefs to resolve disputed facts. Rather, the Court considers them merely to highlight uncontestable procedural facts. For these reasons, the Court analyzes the merits of Defendants' Motion to Dismiss under a summary judgment standard.

   2.  *Standard of Review for Motions for Summary Judgment under Rule 56(a)*

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

    *3.*    *Law and Argument*

The Local Government Tort Claims Act ("LGTCA") bars actions for unliquidated damages against local governments or their employees unless the plaintiff provides notice of the claim within 180 days after the injury. Md. Code Ann., Courts and Judicial Proceedings, § 5-304 (LexisNexis 2006 & Supp. 2011). A plaintiff's failure to plead satisfaction of the LGTCA's notice provision is fatal to a disability discrimination action. *Hansen v. City of Laurel*, 25 A.3d 122, 137 (2011).

The plaintiff in *Hansen* sued the City of Laurel ("City") for age and disability discrimination under Maryland state and local laws. *Hansen*, 25 A.3d at 124 n.3. The City moved to dismiss for failure to state a claim. *Id.* at 125. In its supporting memorandum, the City argued that Hansen failed to allege that he had complied with the LGTCA's notice provision. *Id.* Hansen filed a response to the City's motion in which he failed to address the City's argument that he failed to *plead* compliance with the LGTCA's notice provision. *Id.* Rather, Hansen argued that

he had satisfied the notice requirement *in fact*. *Id.* The trial court granted the City's motion and the appellate court affirmed *Id.* at 126–27.

The Court of Appeals granted Hansen's cert petition. *Id.* at 127. The Court of Appeals declined to consider whether Hansen had actually complied with the LGTCA's notice requirement. *Id.* at 129. Instead, the Court of Appeals addressed whether Hansen's failure to plead compliance with the same barred his claim. *Id.* The Court of Appeals held that a plaintiff must expressly plead satisfaction with the LGTCA's notice requirement to withstand a motion to dismiss based on the failure to do so. *Id.* at 124, 137.

The *Hansen* court acknowledged that "pleading satisfaction of the LGTCA notice obligation may not be evident immediately to a potential tort claimant." *Id.* at 134. Yet the Court of Appeals cited several omissions on the part of Hansen that, in its estimation, mitigated the harshness of the case's outcome. For instance, "the City advised Hansen of the pleading shortcoming through its motion to dismiss." Nonetheless, Hansen neither amended nor moved to amend his complaint. *Id.* Nor did he voluntarily dismiss his Complaint and refile it. *Id.* In short, the Court of Appeals found no equitable considerations sufficient to spare Hansen from his obligation to plead compliance with the LGTCA's notice requirement. *See id.* at 134–37.

The facts in this case are indistinguishable from those in *Hansen*. Here, as in *Hansen*, Mr. LaPier asserts age and disability discrimination claims under Maryland state law. Furthermore, both the plaintiff in *Hansen* and Mr. LaPier failed to plead satisfaction of the LGTCA's notice requirement. Moreover, like the defendants in *Hansen*, Defendants filed a motion to dismiss for failure to state a claim. What is more, as with the defendants in *Hansen*, Defendants explicitly state that "LaPier does not *allege* . . . notice to the County of his intent to file suit" in their Memorandum in Support. (Doc. 6, at 18.) (Emphasis added.)

None of the equitable considerations that the *Hansen* court mentioned are present in this case. Defendants notified Mr. LaPier that his Complaint was inadequate in their Memorandum in Support. Nevertheless, Mr. LaPier failed to move to amend his complaint, voluntarily dismiss his case, or take any other step evidencing the intent to comply with the LGTCA's notice provision.

The preceding discussion demonstrates that (1) the relevant procedural facts are incontrovertible and (2) the incontrovertible facts entitle Defendants to judgment as a matter of law. Therefore, the Court grants summary judgment in favor of Defendants on Mr. LaPier's state law claims and dismisses these claims *with prejudice*.

## V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. (Doc. 6.) Consequently:

(1)     The Court dismisses Plaintiff's state law claims *with prejudice*;

(2)     The Court dismisses Plaintiff's federal claims *without prejudice*;

(3)     The Court dismisses Counts I (§ 1983) and IV (ADA) of the Complaint <u>in relation to</u> the Police Department *with prejudice*.

An Order consistent with this Memorandum Opinion will follow.

|  |  |
|---|---|
| September 27, 2011 | /s/ |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |