IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN LAPIER, <br><br> Plaintiff, <br><br> v. <br><br> PRINCE GEORGE'S COUNTY, <br> MARYLAND *et al.*, <br><br> Defendants. | Civil Action No. 10-CV-2851 AW |

**MEMORANDUM OPINION**

Plaintiff Steven LaPier brings this action against Prince George's County, Maryland and Roberto L. Hylton, former Chief of Police of Prince George's County. Plaintiff asserts the following claims: (1) a § 1983 First Amendment claim; (2) a § 1983 substantive due process claim; and (3) disability discrimination claims under the ADA and ADA and Amendments Act of 2008 (ADAAA), as well as the Rehabilitation Act of 1973. Presently pending before the Court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Motion to Dismiss) and Defendants' Motion to Strike Paragraph 33 of the Amended Complaint (Motion to Strike). The Court has reviewed the entire record and deems no hearing necessary. For the reasons that follow, the Court (1) **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss and (2) **GRANTS** Defendants' Motion to Strike.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court takes the following facts from the Memorandum Opinion it issued on September 27, 2012 (Opinion), supplementing them where necessary to reflect new allegations

raised in Plaintiff's Amended Complaint. Plaintiff Steven LaPier (Plaintiff) is a resident of Anne Arundel County. Defendant Prince George's County ("County") is a political subdivision of the State of Maryland. Defendant Roberto L. Hylton (Chief Hylton) is a former Chief of Police for the County. Although Plaintiff named Prince George's County Police Department ("Police Department") in his Complaint, Plaintiff has not named the Police Department in his Amended Complaint.[1]

Plaintiff began training as a student officer at the Police Department sometime in October 2008. Plaintiff alleges that he witnessed "what he considered inappropriate and unprofessional conduct by the police instructors" from the "very first day of the Academy." Doc. No. 21 ¶ 12. Plaintiff alleges various examples of this conduct—e.g.: the instructors' use of "foul language"; the instructors' forcing the cadets to fold clothes for weeks; an instructor's punching a hole in a wall and "telling" a cadet to pay for it; and the instructors' forcing students to change in a parking lot "at some point during the winter months." *See, e.g.*, *id.* ¶¶ 12–14, 16. Although Plaintiff alleges that he and other student officers were subjected to "demeaning and dehumanizing treatment" on a daily basis, Plaintiff alleges no details regarding such treatment. *Id.* ¶ 15. Plaintiff also alleges that he communicated these concerns to Major David Morris who, at some point, communicated them to "appropriate personnel" at the Department. *Id.* ¶ 16.

On or around April 9, 2009, Plaintiff passed out during a training run. One or more doctors diagnosed Plaintiff with Osler-Weber-Rendu syndrome, which Plaintiff characterizes as a chronic blood disorder that causes, inter alia, decreased oxygen in the blood. *Id.* ¶ 19. Plaintiff resumed his normal training activities after a weeklong period during which his doctors advised

---

[1] This change presumably reflects the fact that the Court dismissed Plaintiff's § 1983 claims and ADA claims in relation to the Police Department in its Opinion. Doc. No. 19 at 4–5. As Plaintiff has failed to name the Police Department as a defendant in his Amended Complaint, the Court will terminate the Police Department as a party to the case.

him to perform only light work. In a letter dated May 5, 2009, one of Plaintiff's doctors informed the County that Plaintiff was fit to resume normal training activities.

The County's Medical Advisory Board (MAB) met on June 4, 2009. The MAB reviewed Plaintiff's medical records, determined him to be unfit for duty, and recommended his separation from the Police Department. Chief Hylton advised Plaintiff the Board's recommendation in a letter that Chief Hylton signed on June 9, 2009 and delivered on June 18, 2009. Plaintiff appealed the MAB's recommendation that Hylton terminate him to the County Personnel Board (Personnel Board). Plaintiff was represented by legal counsel during this appeal and was permitted to produce witness testimony on his behalf. *Id.* ¶ 31. Plaintiff also alleges that the Personnel Board made a decision and transmitted it to the County's law office for review, but that the County's law office has unjustifiably failed to permit the Personnel Board's decision to issue.

On June 17, the day before Plaintiff received the termination letter, he learned of a cheating scandal in which instructors were spoon-feeding exam answers to cadets. *Id.* ¶ 23. Apparently, on the same day, Plaintiff informed Morris of his discovery, who in turn informed Chief Hylton. *Id.* ¶¶ 23–24.

On October 14, 2010, Plaintiff filed a Complaint containing six Counts. In the aforementioned Opinion, the Court dismissed the Complaint in its entirety. Although the Court dismissed the Plaintiffs state law claims with prejudice, it dismissed his § 1983 claims and disability discrimination claims without prejudice and ordered him to file an Amended Complaint. Pursuantly, Plaintiff filed an Amended Complaint on October 4, 2012. Doc. No. 21. The Amended Complaint contains four Counts. Count I asserts a § 1983 First Amendment claim. Under Count II, Plaintiff asserts a § 1983 procedural due process claim. Count III, for its part,

asserts a claim for violations of the ADA and ADAAA. Lastly, Count IV asserts a claim for violation of the Rehabilitation Act of 1973.

A few weeks later, Defendants filed a Motion to Dismiss. Doc. No. 23. Contemporaneously, Defendants filed a Motion to Strike. Doc. No. 22. These motions are ripe for review.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery, "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with *Twombly*'s facial plausibility standard).

## III.   LEGAL ANALYSIS

### A.   Rule 56(d) Affidavit/Declaration

Plaintiff asks the Court to allow discovery on the ground that he cannot adequately oppose Defendants' Motion to Dismiss without it. Rule 56(d) provides as follows:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

The Court denies this request for three basic reasons. First and foremost, the ensuing analysis indicates that no amount of discovery would help Plaintiff withstand Defendants' Motion to Dismiss. Second, Plaintiff fails to adequately explain wherein discovery would help him survive Defendants' Motion to Dismiss. Plaintiff's own scant statements show that his Rule 56(d) request is grounded in speculation: "[T]his case is being ruled upon prior to discovery and Plaintiff, pursuant to Rule 56(f) [sic] should be granted time to engage in discovery to obtain **further information** if necessary to address the concerns of the Court." Doc. No. 26 at 9 (emphasis added). In other words, Plaintiff fails to satisfactorily explain what "further information" he seeks through discovery or, for that matter, how this information would help him stave off the Motion to Dismiss. Third, the record does not reflect that Plaintiff has filed an affidavit or declaration stating the "specified reasons" that he cannot present facts essential to justify his opposition to the Motion to Dismiss. For these reasons, the Court denies Plaintiff's Rule 56(d) petition.

**B.     Motion to Strike**

In their Motion to Strike, Defendants urge the Court to strike paragraph 33 of the Amended Complaint because it violates Rule 408 of the Federal Rules of Evidence. Paragraph 33 refers to a supposed settlement offer that Defendants made during an EEOC mediation. As such evidence would be inadmissible under Rule 408, the Court grants Defendants' Motion to Strike.

**C.     Motion to Dismiss**

*1.     Count I—§ 1983 First Amendment Claim*

The First Amendment provides as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Plaintiff's Amended Complaint sounds in a violation of the Free Speech Clause. The gravamen of Plaintiff's Free Speech Clause claim is that Defendants unconstitutionally retaliated against him because he sought to expose corruption at the Academy.

To state a prima facie case for a Free Speech Clause retaliation claim, the plaintiff must establish three elements. "First, the plaintiff must demonstrate that his or her speech was protected." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (citation omitted). Generally, to establish that his or her speech is protected, the free speech retaliation plaintiff must show that "the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern." *See Huang v. Bd. of Gov'rs of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) (footnote omitted) (citing *Connick v. Myers*, 461 U.S. 138 (1983)). "Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech." *Id.* (citation omitted). "Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* (citation omitted).

In this case, Plaintiff fails to adequately allege that his speech was protected. Essentially all of Plaintiff's purportedly protected speech relates to relatively minor, insular matters that fail to implicate areas of broad public concern. Following are examples of such allegations: the instructors' use of "foul language"; the instructors' forcing the cadets to fold clothes for weeks; an instructor's punching a hole in a wall and "telling" a cadet to pay for it; and the instructors' forcing students to change in a parking lot "at some point during the winter months." Although

Plaintiff alleges that he and other cadets were subjected to "demeaning and dehumanizing treatment" on a daily basis, Plaintiff provides no details regarding such treatment.

Granted, Plaintiff alleges that he was fired in retaliation for his complaint about a "massive" cheating scandal. The Court agrees with Plaintiff that the cheating scandal constitutes a matter of broad public concern. However, as the Court held in its prior Opinion, the Amended Complaint's allegations are insufficient to support an inference that this complaint caused the County to terminate Plaintiff. Although Plaintiff alleges that he exposed the cheating scandal a day before his termination letter was "delivered," Plaintiff acknowledges that Chief Hylton signed the termination letter on June 9, over a week before Plaintiff lodged this complaint. Plaintiff also acknowledges in his Amended Complaint that Chief Hylton instructed Plaintiff to memorialize his allegations in a letter to Chief Hylton, Doc. No. 24 ¶ 24, which cuts against the inference that Chief Hylton and/or the County fired Plaintiff for exposing the cheating scandal. Indeed, Plaintiff also alleges that internal affairs conducted an investigation in connection with his complaint and notified him via letter that its investigation had "sustained" many of his allegations, including those about "massive cheating." *Id.* ¶ 29. In short, in light of all the allegations, Plaintiff fails to state a cognizable First Amendment retaliation claim. Accordingly, considering that the Court has already extended Plaintiff leave to amend his § 1983 First Amendment claim, the Court dismisses this claim with prejudice.[2]

2.     *Count II—§ 1983 Procedural Due Process Claim*

Generally, due process comes in two varieties: substantive due process and procedural due process. *United States v. Salerno*, 481 U.S. 739, 746 (1987). This case implicates neither

---

[2] Plaintiff also fails to make any specific allegations in the Amended Complaint "in regards to the existence of the County's policy, custom, or practice." *See infra* Part III.C.2, pp. 10–11.

variety. The Supreme Court has traditionally referred to the requirement that the state implement action depriving a person of life, liberty, or property in a fair manner as procedural due process. *Id.* at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The touchstone of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews*, 424 U.S. at 333 (citations and internal quotation marks omitted).

In this case, Plaintiff fails to state a cognizable procedural due process claim. Plaintiff acknowledges that the MAB reviewed his medical records, including a letter from a doctor stating that he was fit for duty. Although Plaintiff states that the MAB "did not order an independent medical exam" or "have a single doctor's report" stating that Plaintiff was incapable of performing the duties of a police officer, Plaintiff's Amended Complaint woefully fails to explain wherein the MAB had a duty to implement such procedures. In further derogation of his procedural due process claim, Plaintiff alleges that he appealed the MAB's recommendation that Hylton terminate him to the Personnel Board. Likewise indicative of the *presence* fair procedures, Plaintiff alleges that he was represented by legal counsel during this appeal and was permitted to produce witness testimony on his behalf. Plaintiff also asserts that the Personnel Board made a decision and transmitted it to the County's law office for review. These allegations do not sustain the inference that the County deprived Plaintiff of a reasonable opportunity to be heard.

Admittedly, Plaintiff alleges that the County's law office has not allowed the Personnel Board's decision to issue, from which Plaintiff infers an improper motive. However, Plaintiff fails to allege that he has availed himself of state remedies (e.g. petitioning for writ of mandamus), or that no state remedies exist to remediate the County's failure to issue the Personnel Board's decision. Rather, Plaintiff simply states that he has sent certain County

officials a letter apprising them of this fact and has yet to receive a response. Therefore, although the County's failure to issue the Personnel Board's decision may raise questions, Plaintiff has not stated a facially plausible procedural due process claim.

Nor has Plaintiff adequately alleged the presence of a municipal custom. In pertinent part, § 1983 provides as follows: "Every **person** who, under color of [law], subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983 (emphasis added). The Supreme Court has addressed whether municipalities are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 658, 664–89 (1978). The *Monell* Court determined that municipalities are persons under § 1983 and that, consequently, people can sue municipalities for damages on account of constitutional deprivations. *See id.* at 690.

The *Monell* court cabined the scope of its holding, however. The Court concluded that "a municipality cannot be held liable . . . under § 1983 on a *respondeat superior* theory." *Id.* at 691. Therefore, the Court held that a municipality may incur § 1983 liability only when "execution of [the municipality's] policy . . . inflicts the injury." *Id.* at 694. "Thus, [plaintiffs are] obliged to identify a municipal policy, or custom that caused [their] injury." *Walker v. Prince George's County, Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (second alteration in original) (citations and internal quotation marks omitted). Generally, the failure to specifically identify "a [municipal] policy, custom, or practice" is fatal to a *Monell* claim. *See id.* (citations and internal quotation marks omitted).

In this case, although Plaintiff alleges a *Monell* violation based on the County's failure to issue the Personnel Board's decision, Plaintiff fails to make any specific allegations in the

10

Amended Complaint "in regards to the existence of the County's policy, custom, or practice." *Id.* Furthermore, although courts may impose municipal liability "for a single decision by a municipal policymaker . . . in **appropriate circumstances**," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (emphasis added), the policymaker's single decision must "**directly** cause a violation of constitutional rights." *Id.* at 484. Here, Plaintiff has not alleged that a policymaker within in the meaning of *Monell* and its progeny made the decision to withhold the issuance of the Personnel Board's decision. Furthermore, given the sparseness of Plaintiff's allegations, it is exceedingly unlikely that the policymaker's decision "directly" caused the procedural due process violation of which Plaintiff complains within the meaning of *Pembaur*.

For the foregoing reasons, the Court dismisses Plaintiff's § 1983 procedural due process claim. This dismissal is with prejudice. Although this is the first time Plaintiff has pleaded this claim, nothing prevented Plaintiff from asserting the same claim in his original Complaint. What is more, Plaintiff has set forth the allegations underlying his § 1983 procedural due process claim in considerable detail; there is no reason to think that allowing him to file a second amended complaint would change this claim's fate.

    3.    *Qualified Immunity*

Defendants argue that qualified immunity insulates Chief Hylton from liability. Qualified immunity protects public officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). The Supreme Court has articulated a two-step test to resolve qualified immunity claims. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted).

First, courts must "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Id.* (citations omitted). Second, where plaintiffs satisfy the first step, courts must determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

In this case, as illustrated above, the alleged facts do not make out a violation of a constitutional right. Accordingly, Chief Hylton is entitled to qualified immunity and the Court dismisses him as a party to this action.

    4.    *Disability Discrimination*

        a.    ADAAA

The County argues that Plaintiff is not a qualified individual with a disability under the ADAAA. An individual can show that he is disabled in three ways, only two of which are relevant to this case, under the ADAAA. An individual can show that he suffers from "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Alternatively, an individual can show that his employer regarded him as having such an impairment. *Id.* § 12102(1)(C).

            i.    *Actual Disability*

Under the ADAAA, an individual has an actual disability where he suffers from a physical impairment that substantially limits at least one major life activity. *See id.* § 12102(1)(A). One can divide this definition of disability into three prongs: (1) whether someone suffers from a physical impairment; (2) whether the physical impairment limits at least one of the person's major life activities; and (3) whether such limitation is substantial.

In this case, Plaintiff has adequately alleged that he has a physical impairment, namely, his chronic blood disorder. Further, Plaintiff has sufficiently stated that this impairment limits a

major life activity. The ADAAA defines "major life activities" to include "breathing," as well as "respiratory" and "circulatory" functions. *Id.* § 12102(2)(A)–(B). Here, Plaintiff alleges that he passed out on account of a chronic blood disorder that causes decreased oxygen in the blood. At a minimum, this event would seem to implicate breathing, respiration, and/or circulation.

Therefore, the only question is whether Plaintiff has satisfactorily stated that his blood disorder "substantially" limits a major life activity. As the Court noted in its Opinion, the ADAAA does not define the phrase "substantially limits." In an attempt to fill this gap, the Court reviewed the ADAAA's legislative history and concluded that "although the [ADAAA] evinces Congress's intent to lower the threshold for demonstrating a disability, the impairment's severity must rise above a floor of material restriction."

Although the Court believes its reading of the legislative history is reasonable, the Court overlooked the fact that Congress explicitly "directed the EEOC to revise that portion of its regulations which defines 'substantially limits' as 'significantly restricted' to be consistent with the ADAAA." *Gaus v. Norfolk S. Ry. Co.*, 2011 WL 4527359, at *16 (W.D. Pa. Sep. 28, 2011) (citing ADAAA, Pub. L. No. 110–325, § 2(b)(5), (6), 122 Stat. 3553, 3554 (codified in scattered sections of 42 U.S.C.)). Pursuantly, the EEOC has issued regulations that, while declining to expressly define the term "substantially limits," embody a set of detailed guidelines for determining whether an impairment substantially limits a major life activity. *See* 29 C.F.R. § 1630.2(j). For instance, the EEOC's regulations provide that "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii). The EEOC's regulations further provide that "[a]n impairment need not prevent, or significantly

13

or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."

Here, at a minimum, Plaintiff has suitably asserted that his blood disorder substantially limits the major life activities of breathing, respiration, and/or circulation. To reiterate, Plaintiff alleges that he suffers from a chronic blood disorder that, inter alia, causes decreased oxygen in the blood. Plaintiff maintains that he has experienced "bleeding events" from his adolescence. Plaintiff further avers, and Defendants do not dispute, that Plaintiff lost consciousness during a training activity. In light of these allegations, it is plausible that Plaintiff's blood disorder limits his ability to engage in major life activities (e.g. breathing) compared to most people in the general population. Anything less would make a mockery of the ADAAA's mandate that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A); *see also* 29 C.F.R. § 1630.2(j)(1)(i) ("'Substantially limits' is not meant to be a demanding standard."). Accordingly, Plaintiff has stated a cognizable claim for actual disability.

### ii. Perceived Disability

Pertinently, the ADAAA provides that disability means being "regarded as" having an impairment that substantially limits at least one major life activity. *See* 42 U.S.C. § 12102(1). An employee may satisfy this definition by showing that his employer subjected him to discrimination "because of a . . . perceived . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). Here, Plaintiff alleges that the County perceived him as disabled because, inter alia, he provided the County with medical documentation of his blood disorder and the County relied on such documentation in determining him to be physically unfit for duty. The County does not dispute these assertions.

Instead, the County contends that Plaintiff's blood disorder is "transitory and minor" and, therefore, does not fall under the ADAAA's "regarded as" definition of disability. *See id.* § 12103(3)(B). The foregoing discussion, however, demonstrates that Plaintiff has adequately alleged that his blood disorder is more than minor. Moreover, the ADAAA defines "transitory impairments" as those with "an actual or expected duration of 6 months or less." *Id.* In this case, by contrast, Plaintiff maintains that he has suffered from his blood disorder since he was an adolescent. Therefore, the County's argument is without merit. In short, Plaintiff has stated a cognizable claim for perceived disability.

### iii.     Prima Facie Case

Alternatively, the County contends that Plaintiff has failed to state a prima facie case for disability discrimination. "In an ADA wrongful discharge case, a plaintiff establishes a prima facie case if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995)). "One is within the ADA's protected class if one is a qualified individual with a disability." *Id.* (citation and internal quotation marks omitted).

In this case, as explained above, Plaintiff has suitably asserted that he comes within the ADA's protected class because he has stated a cognizable claim that he is disabled under the ADAAA. As to element 2, the County does not dispute that it discharged Plaintiff. Regarding element 3, Plaintiff alleges the following: (1) he could perform his job duties satisfactorily; (2) his doctor provided a letter stating essentially the same; and (3) he resumed "normal" training

activities after his one-week hiatus. Although these allegations are somewhat sparse, they suffice to state that Plaintiff was performing at a level that met the County's legitimate expectations. Finally, as for the fourth element, the Amended Complaint adequately alleges that Plaintiff's firing occurred under circumstances raising a reasonable inference of unlawful discrimination. Plaintiff alleges that: (1) he passed out on a training run due to a chronic blood disorder; (2) he informed the County of his disorder; (3) the County placed him on light duty for a week, after which he resumed normal training duties; and (4) the County terminated him for being unfit for duty. Furthermore, Plaintiff alleges that the County terminated him approximately two months after he fainted and roughly one month after Plaintiff's doctor informed the County in a letter that, despite his alleged ailments, Plaintiff was ready to resume training. In light of these allegations, Plaintiff has stated a facially plausible claim that he can satisfy the elements of a prima facie case.[3]

  b. Rehabilitation Act

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability . . . [shall] be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Courts use the same standards to analyze a claim for discrimination under the Rehabilitation Act as they do a claim for discrimination under the ADAAA. *See* ADAAA, Pub. L. 110-325, § 7(1), 122 Stat 3553, 3558 (amending the Rehabilitation Act to incorporate the ADAAA's definition of disability); *see also Cochran v. Holder*, No. 10–1548, 2011 WL 2451724, at *3 (4th Cir. June 21, 2011) (citations omitted). Thus, because Plaintiff has stated a cognizable claim for disability discrimination under the

---

[3] Besides, in the context of employment discrimination, pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002).

ADAAA, it forcibly follows that he has stated a cognizable claim for disability discrimination under the Rehabilitation Act.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Strike and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. Consequently:

(1) The Court dismisses the Prince George's County Police Department as a party;

(2) The Court dismisses Chief Hylton as a party;

(3) The Court dismisses Count I (§ 1983 First Amendment) and Count II (§ 1983 procedural due process) of Plaintiff's Amended Complaint with prejudice; and

(4) The Court denies the County's Motion to Dismiss as to Count III (ADAAA) and Count IV (Rehabilitation Act) of Plaintiff's Amended Complaint.

An Order consistent with this Memorandum Opinion will follow. The Court will issue a Scheduling Order.

| April 26, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |