IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

STEVEN LAPIER,

    Plaintiff,

        v.                       Civil Action No. 10-CV-2851 AW

PRINCE GEORGE'S COUNTY,
MARYLAND et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment. The Court has reviewed the record and deems no hearing necessary. For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court takes the following facts from its prior Memorandum Opinions, supplementing them as necessary to reflect subsequent developments in the record. Plaintiff Steven LaPier (Plaintiff) began training as a student officer at the Prince George's County Police Department (Department) in October 2008. On or around April 9, 2009, Plaintiff passed out during a training run. About a week later, the Department's fitness coordinator prepared a memo in which he discussed the progress, or lack thereof, in Plaintiff's fitness. Doc. No. 16-5. The memo states that, on November 6, 2008, Plaintiff completed a 1.5 mile fitness run in 17:30. The memo also states that, on March 31, 2009, Plaintiff completed the next 1.5 mile fitness run in only 21:43.

1

Plaintiff was hospitalized subsequent to his fainting incident. He was diagnosed with Osler-Weber-Rendu syndrome, which evidently is a chronic blood disorder that causes decreased oxygen in the blood. Subsequent to his diagnosis, Plaintiff returned to work and was placed on light duty for one week. Plaintiff alleges that he resumed normal training activities after one week, including completing training runs. Plaintiff does not state how long these runs were or in what time he completed them.

The County's Medical Advisory Board (MAB) met on June 4, 2009. The MAB reviewed Plaintiff's medical records, determined him to be unfit for duty, and recommended his separation from the Department. Roberto L. Hylton, then Chief of Police of the Department, advised Plaintiff of the Board's recommendation in a letter he signed on June 9, 2009 and delivered on June 18, 2009. A day after Plaintiff received the termination letter, he complained to Hylton about the alleged mistreatment of fellow cadets. Later, Plaintiff appealed the MAB's recommendation that Hylton terminate him to the County Personnel Board. Plaintiff was represented by legal counsel during his appeal and was permitted to produce witness testimony on his behalf. Plaintiff's appeal was unsuccessful.

On October 14, 2010, Plaintiff filed a Complaint containing the following claims: First Amendment retaliation; wrongful discharge; disability discrimination under the ADAAA[1] and Rehabilitation Act; disability discrimination under Maryland law; and age discrimination under Maryland law. On September 27, 2011, the Court issued a Memorandum Opinion and Order dismissing Plaintiff's state claims with prejudice and federal claims without prejudice. Doc. Nos. 19–20. Plaintiff filed an Amended Complaint, reasserting his federal claims and adding a federal claim for violation of procedural due process. Defendants again moved to dismiss. The Court

---

[1] Plaintiff's claim is technically under both the ADA and the ADAAA. The Court will refer to Plaintiff's ADA/ADAAA claim as an ADAAA claim.

issued a second Memorandum Opinion and Order (Second Opinion) in which it dismissed Plaintiff's First Amendment and procedural due process claims with prejudice. The Court also dismissed the Department and Chief Hylton from the suit. However, the Court allowed Plaintiff's federal disability discrimination claims to go into discovery.

After discovery, the County, as the sole remaining Defendant, moved for summary judgment. Doc. No. 40. The County's Motion is ripe.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an

assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III.   LEGAL ANALYSIS

#### A.   ADAAA Claim

The ADAAA generally prohibits employers from discriminating against qualified individuals on the basis of disability. *See* 42 U.S.C. § 12112(a). Such discrimination includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability . . . ." *Id.* § 12112(5)(A). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

Under the ADAAA, an individual can show that he is actually disabled in three ways, only two of which are relevant to this case. An individual can show that he suffers from "a physical . . . impairment that substantially limits one or more major life activities of such individual." *Id.* § 12102(1)(A). Alternatively, an individual can show that his employer regarded him as having such an impairment. *Id.* § 12102(1)(C). An employee may satisfy the latter definition by showing that his employer subjected him to discrimination "because of a . . . perceived . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

In this case, a reasonable juror could conclude that Plaintiff has a substantial physical impairment that limits at least one major life activity. Although the evidence is somewhat

unclear as to precisely what impairment Plaintiff has, there is sufficient evidence to conclude that Plaintiff has a vascular or blood condition that considerably restricts his ability to work, breathe, and/or to have proper circulation. *See, e.g.*, Doc. No. 11-1. A reasonable juror could also conclude that the County regarded Plaintiff as having a disability. It is undisputed that the County had medical documentation discussing Plaintiff's blood condition and relied on it in determining that he was unfit for duty.

Thus, the issue is whether Plaintiff could, with or without reasonable accommodation, perform the essential functions of a police officer. *Id.* § 12111(8). Due consideration must be given to "the employer's judgment as to what functions of a job are essential." *See* 42 U.S.C. § 12111(8). Evidence of whether a particular function is essential includes the work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n). Responding to emergencies and making forceful arrests are essential functions of a police officer. *See Champ v. Baltimore County*, 884 F. Supp. 991, 997 (D. Md. 1995). Therefore, as a measure of job fitness, employers may require applicants or cadets to complete training runs in a certain amount of time. *Cf. Lanning v. Se. Pa. Transp. Auth.*, 308 F.3d 286, 288 (3d Cir. 2002) (pre-hire, pre-training ability to complete 1.5 mile run within twelve minutes measured the minimum aerobic capacity necessary to successfully perform the job of a transit police officer).

In this case, no reasonable juror could conclude that Plaintiff could perform the essential functions of a police officer without a reasonable accommodation. The Department's performance standards require police officers make arrests, respond to emergency calls, and aggressively patrol assigned areas. *See* Doc. No. 6-8. The Department's standards also state that cadets in Plaintiff's age cohort must complete 1.5 mile runs in 12:55 to 13:44 to obtain an average fitness score. Any time slower than 14:45 receives a fitness score of "0." *See* Doc. No.

16-5. It is undisputed that Plaintiff completed his first 1.5 mile fitness run in 17:30 and his second in 21:43. These times are considerably slower than the Department's standards. Indeed, the County's medical expert describes the *faster* 17:30 time as "not faster than a fast walk." Doc. No. 40-6 at 10. Although Plaintiff vaguely states that he completed all his training runs when he came off of light duty, *see* Doc. No. 16-9 at 47, he never unequivocally states that he completed—or even could complete—a fitness run in a minimally acceptable time. Accordingly, no reasonable juror could conclude that Plaintiff could perform the essential functions of a police officer without a reasonable accommodation.

The next question is whether Plaintiff could have performed the functions of a police officer with a reasonable accommodation. "Plaintiff bears the burden of demonstrating that [he] could perform the essential functions of [his] job with reasonable accommodation." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Ca.*, 31 F.3d 209, 213 (4th Cir. 1994) (citation omitted). Here, Plaintiff completely fails to argue in his opposition that he could have performed the essential functions of the job with a reasonable accommodation. Indeed, Plaintiff devotes the vast bulk of his response to discussing claims that the Court has already dismissed. Nor does Plaintiff's affidavit create a genuine dispute about whether he could have performed the essential functions of the job. Although Plaintiff references a handful of doctor's letters stating that his blood condition did not prevent him from being a police officer, none of these documents even attempts to explain how a reasonable accommodation would have rendered Plaintiff sufficiently fit to perform his job duties. *See* Doc. No. 11-1 at 5–6, 10–11. And although Plaintiff could argue that the County should have kept him on light duty permanently, this argument would fail because permanent, light-duty positions would effectively eliminate the essential functions of chasing suspects on foot and making forcible arrests. *See Allen v. Hamm*, No. Civ.A. RDB 05-879, 2006 WL 436054,

at *11 (D. Md. Feb. 22, 2006) (citations omitted). Accordingly, no reasonable juror could conclude that Plaintiff could have performed the essential functions of a police officer with a reasonable accommodation.

Although Plaintiff makes no such argument, one might argue that the County's decision to terminate him was based on impermissible animus against persons with disabilities. As Plaintiff has presented no direct evidence of discrimination, the *McDonnell Douglas* scheme of proof would apply to such a claim. *See Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). To state a prima face case under the ADAAA, the plaintiff must "prove by a preponderance of the evidence that (1) [he] was in the protected class; (2) [he] was discharged; (3) at the time of the discharge, [he] was performing [his] job at a level that met [his] employer's legitimate expectations; and (4) [his] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *See id.* (citations omitted). "[I]f a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Blakes v. City of Hyattsville*, Civil Action No. 10–CV–3585 AW, 2012 WL 5566784, at *6 (D. Md. 2012) (citation and internal quotation marks omitted). "Where the employer articulates a nondiscriminatory reason for the adverse employment action, the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination vel non." *Id.* (alterations in original) (citations and internal quotation marks omitted). "In other words, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Id.* (citation and internal quotation marks omitted). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors." *Id.* (citation and internal quotation marks omitted).

"Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ." *Id.* (citation and internal quotation marks omitted).

In this case, Plaintiff has failed to present a prima facie case of disability discrimination. Although Plaintiff is arguably in a protected class (i.e., disabled) and was terminated, no reasonable juror could conclude that Plaintiff was performing his job at a level that met the County's legitimate expectations when it fired him. To support this conclusion, the Court incorporates by reference its analysis regarding Plaintiff's undisputed inability to meet the Department's physical fitness standards for training runs. Nor could a reasonable juror conclude that the discharge occurred under circumstances raising a reasonable inference of discrimination. Plaintiff has submitted no comparative, statistical, qualitative, or any other form of circumstantial evidence from which one could infer that the County terminated him "on the basis of" disability. Rather, Plaintiff speculates that the County terminated him because he complained about the mistreatment of cadets. However, as the Court held in its Second Opinion, Plaintiff's allegations do not support the inference that the County retaliated against him as Chief Hylton terminated him several days before Plaintiff complained. Moreover, even if Plaintiff's allegations supported an inference of retaliation, retaliation and discrimination are analytically distinguishable motives. *See Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 674–75 (D. Md. 2011) ("[A]n allegation of retaliation, per se, is insufficient to justify the inference that the firing owed to the employee's [protected status]."). Therefore, Plaintiff has failed to state a prima facie case of disability discrimination.

Even if Plaintiff's allegations sufficed to state a prima facie case, he has failed to rebut the County's nondiscriminatory reasons for firing him. The County contends that it terminated

Plaintiff because of his inability to do his job duties due to his blood condition and the danger this inability posed to the public. Yet "the strength of Plaintiff's prima facie case is nonexistent as no reasonable juror could conclude that he has made out one." *Blakes*, 2012 WL 5566784, at *6. "Therefore, the probative value of Plaintiff's proof that Defendant['s] nondiscriminatory reason is false must be exceedingly high." *Id.* Here, however, Plaintiff has submitted no evidence purporting to show that the County's explanation of its decision is false. Accordingly, no reasonable juror could conclude that the County fired Plaintiff based on impermissible animus against persons with disabilities.

**B.     Rehabilitation Act Claim**

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability . . . [shall] be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Courts use the same standards to analyze a claim for discrimination under the Rehabilitation Act as they do a claim for discrimination under the ADAAA. *See* ADAAA, Pub. L. 110-325, § 7(1), 122 Stat 3553, 3558 (amending the Rehabilitation Act to incorporate the ADAAA's definition of disability); *see also Cochran v. Holder*, No. 10–1548, 2011 WL 2451724, at *3 (4th Cir. June 21, 2011) (citations omitted). Therefore, because Plaintiff's ADAAA claim is not viable, the County is not liable under the Rehabilitation Act.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the County's Motion for Summary Judgment. A separate Order follows.

|  February 7, 2013  |  /s/  |
|---|---|
|  Date  |  Alexander Williams, Jr.<br>United States District Judge  |